**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ILLINOIS ASSET MANAGEMENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-1912 |
| | ) | |
| SCOTT J. KRONE, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT SCOTT J. KRONE'S MOTION TO VACATE**
**THE JUDGMENT AND DISMISS OR STAY THIS CASE PURSUANT TO THE**
***COLORADO RIVER* ABSENTION DOCTRINE**

Defendant, SCOTT J. KRONE, through his undersigned attorneys, and for his Motion for

to Vacate the Judgment and Dismiss or Stay this Case pursuant to the *Colorado River* Abstention

Doctrine and Rules 12(b)(1) and 60(b)(5) or (6) of the Federal Rules of Civil Procedure, states the

following.

## **INTRODUCTION**

At the most recent hearing before this Court on Krone's motion to reconsider, the Court

questioned Plaintiff's motive for filing this lawsuit in federal court, and whether Plaintiff was

forum shopping to avoid *Krone v. Freedom Builders, LLC, et al*, Circuit Court of Cook County,

Illinois ("State Court Lawsuit") or the judge presiding over it. The court was right to question

Plaintiff's motive, because the State Court Lawsuit involves the exact same subject matter at issue

in this case: the enforceability of the confession of judgment. It makes no sense for Plaintiff to

have sought enforcement of Krone's commercial guarantee before this Court – knowing full well

that the same issues had already been and would continue to be litigated before Judge David Atkins

in the State Court Lawsuit – unless Plaintiff's purpose was to circumvent the State Court Lawsuit

1

and Judge Atkins.  This is not mere speculation.  Before Plaintiff made the decision to file a federal lawsuit, Judge Atkins had already heard Krone's motion for a temporary restraining order to bar enforcement of the confession of judgment (which was opposed by Arif and denied) and a motion for leave to file the Third Amended Complaint which, in part, squarely addresses the enforceability of the confession of judgment and names Plaintiff and its president as defendants (which the judge granted).  And significantly, Plaintiff knew that Judge Atkins reasons for denying Krone's motion for a TRO *did not* include a failure to demonstrate clearly ascertainable right in need of protection or a likelihood of success on the merits.  (See Order denying Krone's Motion for TRO, attached as Exhibit A).  Certainly, Plaintiff could have filed its motion to confess judgment before Judge Atkins.  In fact, on March 18, 2019, counsel for Krone emailed Plaintiff's attorney with that exact proposal in order to preserve the parties' (and now two courts') resources.  (*See* Email to J. Blumenthal dated 3/18/2019, attached as Exhibit B).

Despite the obvious reasons Plaintiff should have pursued this matter in the State Court Lawsuit before Judge Atkins, it chose this Court instead.  And it did so without even mentioning to this Court the existence of the State Court Lawsuit or that the enforceability of the confession of judgement had already been and would continue to be extensively litigated in that lawsuit.  As this Court is well aware now, the State Court Lawsuit stems, in part, from the collective efforts of several individuals, including Plaintiff Illinois Asset Management ("IAM") and its President and purported sole owner, Abdul Q. Arif ("Arif"), to unlawfully force Krone out as a manager and member of two Illinois limited liability companies.  Krone alleges that IAM and Arif obtained the commercial guaranty as part of an unlawful scheme involving Krone's co-managers to use as leverage against Krone in order to force him out of the companies and his property rights in those companies. If Krone is successful, IAM's unlawful and improper use of the commercial guaranty

2

against Krone will be unenforceable, which would render the judgment here invalid. But by getting the judgment here first, and putting the cart before the horse, so to speak, Plaintiff circumvented Judge Atkins so it could enforce the judgment now and sap Krone's resources before a trial or hearing on the merits is able to occur.

Accordingly, given that a concurrent state court case is and has been underway, and given the parallel nature of both lawsuits, this Court should grant this Motion pursuant to the *Colorado River* abstention doctrine, vacate the judgment and dismiss this case without prejudice, or in the alternative, vacate the judgment and stay all proceedings in this case until the State Court Lawsuit is resolved. Plaintiff can then have the confession decided in the State Court Lawsuit.

## BACKGROUND FACTS

For the sake of brevity, Krone adopts and incorporates herein the background facts from his Motion to Open the Judgment and Motion to Reconsider (Dkt. #17 and #22), and will revisit facts as necessary for this motion. Krone's Third Amended Complaint alleges a dispute and scheme to defraud him and other investors, the gist of which involved forcing two companies Krone manages to default on their respective mortgages, and then purchasing the debt from the lenders to enforce against the company or, in this case, Krone himself. (*See* Dkt. #17-2, Krone's Third Amended Complaint, ¶¶ 2-6, attached as Exhibit A to his Motion to Open the Judgment). IAM and Arif participated in this scheme by purchasing the mortgage for Platform Bradley LLC so it could use Krone's commercial guaranty as a sword against him. (*Id*., ¶¶ 77-89 and Counts V, VI, VII, IX, and XII).

Krone is a member and manager of two limited liability companies, Platform I 600 Waukegan ("Waukegan") and Platform Bradley ("Bradley").[1] (Dkt. #17-2, ¶ 8). Krone's co-

---

[1] Both companies are manager-managed, as opposed to member-managed.

3

managers in both companies are Freedom Buildings, LLC ("Freedom") and the Subhash H. Shah Family Partnership ("Shah").[2] Freedom is managed and partially owned by Muthukumar Vellachaimy ("Kumar") and Shah is managed and partially owned by Subhash H. Shah ("Subhash"). (Dkt. #17-2, ¶¶ 9-14). In other words, for all practical purposes, the individuals making the decisions for Freedom and Shah were Kumar and Subhash.

Beginning in 2016, a number of disputes arose over the management of Waukegan and Bradley, with Krone on one side, and Kumar and Subhash on the other. Shortly thereafter, Kumar and Subhash began taking actions to undermine Krone and remove him from the companies, starting with the appointment Arif, their personal attorney, as their "proxy" with respect to both companies.[3] Arif went beyond the scope of "proxy" and began dictating terms, making demands of Krone and in effect trying to bully Krone, even telling Krone at one point that Krone needed to help him make money for Kumar and Subhash or "get out of the way."

Consistent with Arif's demand for Krone to "get out of the way," Kumar and Subhash had already been taking steps to defame Krone and freeze him out and undermine his ability to manage the companies. As set forth in Krone's Third Amended Complaint and in his Motion to Open the Judgment, over the next 18 months the disputes escalated, resulting in two lawsuits filed in 2018, which are now consolidated before Judge Atkins as the State Court Lawsuit.

### Facts Regarding IAM's Purchase Of The
### Bradley Mortgage From International Bank Of Chicago

On February 28, 2019, IAM purchased Bradley's note and mortgage ("Bradley Note") from International Bank of Chicago ("IBC"). (Dkt. #17-2, ¶ 79). That same day, IAM's attorney

---

[2] The fourth and final manager of Bradley is Noel Cain. There are no other managers of Waukegan.
[3] Arif is the President and purported sole Owner of Plaintiff IAM in this federal lawsuit.

advised Krone's attorney that this could be handled the "easy way or the hard way," and that Krone would need to drop his interests in both Waukegan and Bradley, drop his lawsuit and walk away.

On March 7, 2019, IAM sent a demand letter to Krone, threatening to obtain a confession of judgment against Krone for over $6 million if Krone did not, in just five days' time, pay IAM more than $360,000.00, plus attorneys' fees and turn over his past five years of tax returns and other financial documents. (*Id*., ¶ 81). IAM made no demand on Kumar and Subhash, even though they too signed commercial guarantees identical to Krone's. (*Id*., ¶ 82). In other words, the demand was not made in good faith to resolve a dispute, but rather for the purpose of forcing Krone into an untenable bargaining position and killing his efforts to refinance Waukegan.

On March 11, 2019, Krone filed a motion for TRO, and the motion was heard on March 12, 2019. (Ex. A). Shortly thereafter, Krone filed a Motion for Leave to file an Amended Complaint, which included as an exhibit the Third Amended Complaint, which was granted on March 26, 2019. (*See* Order granting Krone leave to file a Third Amended Complaint, attached as Exhibit C).

Meanwhile, on March 21, 2019, Kumar sent an email to all members and managers of Bradley, except for Krone, in which he made additional false and defamatory statements about Krone, and confirmed the roles he, Subhash, and Arif undertook in the Bradley scheme. (*See* Dkt. #17-2, ¶¶ 84-85). In the email, Kumar wrote, in pertinent part, that Krone refused to send any K1 or give a 2018 property report, changed bank accounts in 2018, effectively stopped paying the bank note, and was siphoning off excess revenue. Kumar knew these statements were false, and his statements were so egregiously false that the fourth manager, Noel Cain, was compelled to set the record straight. (*Id*.).

With regard to IAM and its purchase of the Bradley Note held by IBC, Kumar confirmed that his attorney and proxy, Arif, were working together. He also wrote that Arif was trying to collect on the debt from Krone and Arif may eventually foreclose on the property and sell it. He requested a "loan" from the other members to avoid losing their investments. Kumar's email confirms that he and Subhash have worked, and are working, with their attorney/"proxy" Arif to impose the entirety of the Bradley financial obligation onto Krone (despite their own commercial guaranties to shoulder the debt as well). Moreover, Kumar made a not-so-subtle attempt to extort the other Bradley members into giving them a "loan" or risk losing their respective investments in Bradley.

The email is also significant for what Kumar failed to disclose: that he and Subhash signed the same commercial guarantees as Krone, but that Arif has no intention of trying to collect on those guarantees. Instead, he falsely led these investors to believe that Arif's only other remedy would be to foreclose and force the sale of the Bradley property unless the loans were made. (*Id.*). Thus, not only are they trying to foist the entirety of the Bradley financial obligation onto Krone, in breach of their fiduciary duties, but they are fraudulently concealing their own exposure and misrepresenting the situation to the other members, in breach of their fiduciary duties.

## STANDARD

The *Colorado River* doctrine provides that "a federal court may stay or dismiss a suit in federal court when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote 'wise judicial administration.'" *Freed v. JPMorgan Chase Bank, N.A.,* 756 F.3d 1013, 1018 (7th Cir. 2014) ("*Freed II*") (*quoting Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)). "In determining whether to abstain, the court's task is 'not to find some substantial reason for the *exercise* of federal

6

jurisdiction by the district court; rather, the task is to ascertain whether there exist exceptional circumstances, the clearest of justifications that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction.'" *Freed v. Friedman,* 215 F. Supp. 3d 642, 648-49 (N.D. Ill. Oct. 17, 2016) (*quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26 (1983)) (emphasis in original). Analysis of the *Colorado River* doctrine requires two steps. First, the court should inquire "whether the state and federal court actions are parallel." *Freed II,* 756 F.3d at 1018. If the proceedings are parallel, they must then "weigh ten non-exclusive factors to determine whether abstention is proper." *Id.* Here, this federal suit and the State Court Lawsuit are parallel and all but one of the non-exclusive factors favor abstention.

## ARGUMENT

### I.     The Federal Lawsuit And State Court Lawsuit Are Parallel.

This case and the State Court Lawsuit are undeniably parallel, because both cases involve the same parties, and both cases necessarily require the Court to delve into (a) whether Krone has a defense or counterclaim rendering the confession unenforceable and (b) the merits and underlying facts of those defenses and counterclaims. That the State Court Lawsuit is broader in scope does not change the outcome, because the lawsuits do not have to be identical in every respect in order to be parallel. "State and federal suits need not be identical to be parallel." *Freed,* 215 F.Supp.3d at 649; *see also Adkins v. VIM Recycling, Inc.,* 644 F.3d 483, 498-99 (7th Cir. 2011) ("[F]or *Colorado River* purposes…[p]recisely formal symmetry is unnecessary."). Suits are "parallel" when "substantially the same parties are contemporaneously litigating substantially the same issues in another forum." *Freed II,* 756 F.3d at 1019. In other words, "[t]he question is not whether the suits are formally symmetrical, but whether there is a substantial likelihood that the [state] litigation will dispose of all claims presented in the federal case." *AAR Int'l, Inc. v. Nimelias*

*Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (internal quotation marks omitted); *see also Huon v. Johnson & Bell, Ltd.,* 657 F.3d 641, 646 (7th Cir. 2011) (same).

In evaluating parallelism of issues under the *Colarado River* doctrine, district courts must examine whether the cases raise either the same legal allegations or arise from the same set of facts. *Freed II,* 756 F.3d at 1019; *see also Freed,* 215 F.Supp.3d at 649 (abstaining under *Colorado River* where, although the legal allegations were different, the factual disputes overlapped considerably where both cases arose from the same disputed series of financial transactions involving the same sets of individuals/entities and would be resolved largely by reference to the same evidence); *Vulcan Chem. Techs., Inc. v. Barker,* 297 F.3d 332, 341 (4th Cir. 2002) (holding that *Colorado River* abstention was proper where the federal court would otherwise consider "the same evidence and arguments" as did the state court). Here, both cases arise from the same set of facts, and even the legal allegations stem from each other. In both lawsuits, Krone alleges that IAM and its president and purported owner, Arif, conspired with two of Bradley's managers, who owe fiduciary duties to Krone, to form and fund IAM, in order to purchase the Bradley Note, and use Krone's commercial guarantee (and its confession clause) as a weapon against Krone to force him out of the companies. Thus, all of the facts and circumstances involving IAM's purchase of the Bradley debt, Arif's role as "proxy" and attorney for Krone's business partners and the disputes involving those businesses are entangled in the center of the State Court Lawsuit and this lawsuit.

Further, and most importantly, this case, which is a supplemental proceeding to confess a judgement and enforce it, is entirely dependent on the results of the State Court Lawsuit, which will find for or against the enforceability of the confession and determine the outcome of this lawsuit. For instance, in *Freed II,* when considering issue-parallelism, the Court held that "[t]he federal court cannot determine the value of Freed's distributional interest until the claims brought

in state court are resolved." 756 F.3d at 1020; *see also AAR Int'l*, 250 F.3d at 518 (Parallelism under *Colorado River* requires only that there be "a substantial likelihood," not a certainty, "that the [state court] litigation will dispose of all claims presented in the federal case.").

Following the same analysis, the issues in both cases are substantially the same because Krone is seeking declaratory judgment in the State Court Lawsuit that the same commercial guaranty IAM is trying to enforce here is invalid and unenforceable. Thus, if the State Court Lawsuit finds that the commercial guaranty invalid and unenforceable, then IAM's judgment is invalid and disposes of the federal lawsuit. On the other hand, if the State Court Lawsuit finds that the commercial guaranty is valid and enforceable, then enforcement of the judgment in this case becomes streamlined. In either case, having a separate lawsuit in federal court serves no purpose whatsoever, other than to create an additional layer of work for all involved, including this Court.

In addition, the parties in this suit and parties in the State Court Lawsuit. Although the State Court Lawsuit has additional parties, those parties have an interest in the validity and enforcement of the commercial guaranty at issue here. *See Freed II,* 756 F.3d at 1019 ("One way that parties in separate actions are considered substantially the same under the *Colorado River* doctrine is when they have nearly identical interests.") (internal quotation marks omitted); *Romine v. Compuserve Corp.,* 160 F.3d 337, 340 (6th Cir. 1998) ("Exact parallelism is not required...This principle is especially apposite in the instant matter, where the interests of both the named plaintiffs ... are congruent, notwithstanding the nonidentity of the named parties.") (internal quotation marks omitted).

In the State Court Lawsuit, Krone brings claims for breach of fiduciary duties, conspiracy, aiding and abetting the breach of fiduciary duties and defamation against Freedom, Shah, Kumar, Subhash, Arif and IAM arising, in part, out of the attempts to use the commercial guaranty as a

weapon against Krone. In addition, Krone will be seeking leave to amend the State Court complaint to add a claim or abuse of process, which, although rare, is a perfect fit for Krone's allegations.[4] Krone also brings a claim for declaratory judgment that the commercial guaranty is unenforceable in the context and manner in which IAM obtained it and is attempting to use it as a sword against Krone to force him out of the companies. Krone also alleges Kumar and Arif are attempting to leverage IAM's power as a debt-holder over the other members of Bradley in order to extort them into making additional "loans" to the company or risk losing their own ownership interests while, at the same time, misrepresenting IAM's available remedies and concealing their own commercial guaranties. Thus, Krone, IAM, Arif, Freedom, Kumar, Shah, and Subhash all have interests in both cases.

Further, even the parties in the State Court Lawsuit that are not listed in the preceding paragraph have an indirect interest in this case because they were all involved in the conspiracy to oust Krone, which is entangled in the web of facts related to the validity and enforcement of the commercial guaranty on the Bradley Note. And, the inclusion of parties in one suit and not another does not render them non-parallel under *Colorado River*. *Freed,* 215 F.Supp.3d at 652; *see also AAR Int'l*, 250 F.3d at 518 ("the mere presence of additional parties…in one of the cases will not necessarily preclude a finding that they are parallel."). "If the rule were otherwise, the *Colorado River* doctrine could be entirely avoided by the simple expedient of naming additional

---

[4] The elements necessary to plead a cause of action for abuse of process are: (1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings. *Kumar v. Bornstein*, 354 Ill.App.3d 159, 166, 820 N.E.2d 1167 (2nd Dist. 2004). The second element is the "gravamen of the offense," and in order to satisfy it, the plaintiff must "plead facts that ... the process was used to accomplish some result that is beyond the purview of the process," *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 339 Ill.App.3d 177, 183, 790 N.E.2d 925 (2nd Dist. 2003), "or which compels the party against whom it is used to do some collateral thing which he could not legally and regularly be compelled to do." *Cartwright v. Wexler, Wexler & Heller, Ltd.*, 53 Ill.App.3d 983, 986, 369 N.E.2d 185 (1st Dist. 1977). Here, Krone alleges that Arif, as the attorney and proxy for Krone's business partners, purchased the business' debt, which was in default, for the purpose of using the debt's commercial guarantee and its confession of judgment clause as a sword to force Krone out of the companies. Notably, IAM is not attempting to collect on it from the company or from Krone's other two business partners, nor is it attempting foreclose on the property. This is the rare case where an abuse of process claim is proper

parties…..[I]ts impact cannot be obliterated by the stroke of a pen." *Lumen Constr., Inc. v. Brant Constr. Co., 780* F.2d 691, 695 (7th Cir. 1985). Under *Colorado River*, the issues and parties are substantially similar and, thus, parallel.

## II.    The Ten *Colorado River* Factors Heavily Favor Abstention.

The second step in the *Colorado River* analysis requires examining and balancing ten non-exclusive factors: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Freed II*, 756 F.3d at 1018 *quoting Tyrer v. City of S. Beloit,* 456 F.3d 744, 754 (7th Cir. 2006). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required." *Colorado River*, 424 U.S. at 818-19; *see also Tyrer*, 456 F.3d at 754. Nine of the ten factors favor abstention here.

### 1.    Whether the state has assumed jurisdiction over property.

The state court clearly has jurisdiction over the property at issue in this case, the commercial guaranty and the Bradley Note; Plaintiff's only basis for filing in federal court was diversity of the parties. District courts should look to whether its "exercise of jurisdiction in the subsequently filed, parallel federal action would present a significant risk of inconsistent rulings as to the ownership of the property." *Freed,* 215 F.Supp.3d at 655 (*quoting African Methodist Episcopal Church v. Lucien,* 756 F.3d 788, 799-800 (5th Cir. 2014)). That risk is more than

11

significant.  The State Court Lawsuit was not only pending before Plaintiff filed in this Court, but the enforceability of the confession had already been litigated before Judge Atkins on a motion for TRO and he had already signaled his belief that Krone had made a showing of a likelihood of success on the merits.  Moreover, Krone was given leave to add IAM as a defendant to the State Court Lawsuit in part to attack the confession of judgment.  Since the Circuit Court has already assumed jurisdiction over the property and there is a risk of inconsistent ruling, this factor favors abstention.

### 2.      The inconvenience of the federal forum.

Krone concedes that because both cases are pending in Chicago that the federal forum is not inconvenient; however, the weight the Court puts on this factor should be minimal.

### 3.      The desirability of avoiding piecemeal litigation.

This factor favors Krone.  "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results…." *Day v. Union Mines Inc.,* 862 F.2d 652, 659 (7th Cir. 1988).  Here, the federal and state actions involve substantially the same parties and issues, and both cases involve the enforceability and validity of the commercial guaranty on the Bradley Note.  Thus, it favors abstention because "proceeding in a single forum would 'conserve judicial resources and avoid the potential for the two proceedings to reach inconsistent results." *Freed,* 215 F.Supp.3d at 656 (*quoting Freed II,* 756 F.3d at 1022).

### 4.      The order in which jurisdiction was obtained by the concurrent forums.

This factor strongly favors abstention because the State Court Lawsuit was filed ten months before the federal suit, and upon confirming that IAM and Arif actually did purchase the Bradley Note, Krone immediately sought a TRO and then leave to amend his complaint.  *See Lumen Constr.,* 780 F.2d at 697 (holding that this factor favored abstention where the state case was filed

"nearly five months before" the federal case).

### 5. The source of governing law, state or federal.

The source of governing law in this federal diversity suit is Illinois law, which favors abstention. *See Freed,* 215 F.Supp.3d at 656; *Freed II,* 756 F.3d at 1022; *Day,* 862 F.2d at 660 ("a state court's expertise in applying its own law favors a *Colorado River* stay"). Indeed, the Court's authority for opening the judgment and allowing Krone to pursue his defenses and counterclaims is Illinois Supreme Court Rule 276. Even if the Court were to deny Krone's motion to open the judgment, Krone would still proceed with his defenses and counterclaims in the Circuit Court, which could ultimately lead to a competing judgment in his favor.

### 6. The adequacy of state-court action to protect the federal plaintiff's rights.

The Circuit Court is not only competent to protect IAM's rights, it is where this dispute belongs and where Plaintiff should have sought to confess the judgment. Notably, even if the case were to remain before this Court, it would be governed by Illinois substantive law. *See Freed,* 215 F.Supp.3d at 656.

### 7. The relative progress of state and federal proceedings.

The State Court Lawsuit has been going on for almost one year, with some discovery initiated to establish the source of the funds IAM used to purchase the Bradley Note. In this case, the Court will need to decide whether to open the judgment, and if it does, there likely will be concurrent and duplicative litigation and discovery, as well as a duplicative hearing on the merits to determine the validity and enforceability of the commercial guaranty.

### 8. The presence or absence of concurrent jurisdiction.

IAM's claims in federal court arise under Illinois law, thus favoring abstention. *See, e.g.,* *Freed,* 215 F.Supp.3d at 657.

13

**9.      The availability of removal.**

The State Court Lawsuit lacks federal subject matter jurisdiction, and cannot be removed to federal court.  Thus, this factor likewise favors abstention.  *See, e.g., Id.*

**10.      The vexatious or contrived nature of the federal claim.**

The federal case is vexatious and contrived because IAM is not only pursuing this case for an improper and unlawful purpose, it did so in a manner that suggests forum shopping to avoid the State Court Lawsuit.  This creates the untenable situation of inconsistent outcomes, where IAM could have a massive judgement to enforce against Krone personally, which it is already trying to use a knock-out punch so Krone has no resources to defend himself or vindicate his rights.  Certainly, IAM cannot claim the same high ground as a bank seeking to mitigate its risk.  Unlike a lending institution, IAM (and Arif) bought the Bradley Note with eyes wide open, knowing full well the note was in default and that IAM would not under any circumstances pursue Krone's business partners or the real estate securing the debt for satisfaction.  This also explains why Kumar tried to extort the other members of Bradley into giving the company "loans," while giving them the false impression that Arif's only other option to satisfy the debt besides Krone is foreclosure.  The Court not allow Plaintiff's federal court gambit to succeed.

14

## CONCLUSION

For the reasons set forth above, Defendant SCOTT J. KRONE respectfully requests that this Honorable Court enter an Order vacating the judgment and dismissing the lawsuit without prejudice pursuant to the *Colorado River* abstention doctrine, or vacating the judgment and staying the case until the State Court Lawsuit is resolved, and for such further and additional relief the Court deems just and appropriate.

Respectfully submitted,
SCOTT J. KRONE

*/s/ Patrick R. Moran*
One of his attorneys

John J. Rock, ARDC #6237980
Patrick R. Moran, ARDC #6272747
Rock Fusco & Connelly, LLC
321 N. Clark Street, Suite 2200
Chicago, IL 60654
(312) 494-1000 (p)/(312) 494-1001 (f)
jrock@rfclaw.com
pmoran@rfclaw.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that a copy of the foregoing document was served on all counsel of record via the Court's ECF/CM system on the date of filing.

*/s/ Patrick R. Moran*