JEFFREY C. BLUMENTHAL CHARTERED
ATTORNEY AT LAW

March 7, 2019

By E-mail pmoran@rfclaw.com
And U.S. Mail
Patrick R. Moran
Rock Fusco & Connelly, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654

Re: **For Settlement Purposes Only – Demand on Guaranty of Scott Krone**

Dear Mr. Moran:

This follows up on our telephone conference of last week. As I advised you during our telephone conference, on February 28, 2019, my client, Illinois Asset Management, LLC ("IAM") purchased the $5,600,000.00 Loan provided pursuant to a certain Promissory Note dated June 22, 2016 made by Platform Bradley, LLC to International Bank of Chicago ("IBC") or order, and all related Collateral, including, but not limited to, the Guaranty of Scott Krone, which loan and related collateral is known as Loan No. 45▮▮▮ ("Loan No. 45▮▮▮"). During our telephone conference, you requested that I provide you with copies of documentation reflecting my client's purchase of Loan No. 45446. Enclosed is a copy of the Non-Recourse Loan Sale Agreement reflecting my client's purchase of Loan No. 45▮▮▮.

As we discussed in our phone conference in which you acknowledged that your firm represents Mr. Krone, my client, **IAM, will be promptly calling Mr. Krone's Guaranty of Loan No. 45▮▮▮ unless Mr. Krone, within five business days of the date of this letter, cures the current default on Loan No. 45▮▮**, which was initially declared to be in default by IBC by letter dated January 24, 2018, a copy of which is also enclosed. I have been advised that the loan has been over thirty (30) days past due since July 22, 2018 and that the additional default interest due from that date until February 28, 2019 on Loan No. 45▮▮ (which excludes the payments made by or on behalf of Messrs. Vellaichamy and Shah) is $360,965.93 (221 days x $1,633.33 which is the per diem default bump of 10.5%) plus per diem interest of $2,333.33 per day beginning March 1, 2019 ($5,600,000 X 15% ÷ 360). Accordingly, within five business days of the date of this letter, Mr. Krone needs to pay to IAM, the sum of $360,965.93 plus $2,333.33 per day from March 1, 2019 until the date that IAM receives payment on Loan No. 45▮▮ from Mr. Krone. IAM also demands that Mr. Krone agrees to promptly pay IAM's attorney collection fees and produce to IAM within five business days, Mr. Krone's 2018 Balance Sheet and Income Statement and 2018 Federal and State Tax Returns as is required under the GUARANTOR'S FINANCIAL STATEMENTS section of Mr. Krone's Guaranty of Loan No. 45▮▮.

Please advise me asap if Mr. Krone will agree to the terms set forth herein or whether I need to proceed with further legal action. As you know, Mr. Krone's Guaranty provides that Mr. Krone consents to the confession of judgment against him. IAM is prepared to take that action.

Very Truly Yours,

Jeffrey C. Blumenthal

Enclosure

PLAINTIFF'S
EXHIBIT
4
ALL-STATE LEGAL SUPPLY CO.

## NON-RECOURSE LOAN SALE AGREEMENT

THIS NON-RECOURSE LOAN SALE AGREEMENT (this "Agreement"), entered into as of February 28, 2019, by and between **International Bank of Chicago**, an Illinois state-chartered bank, 5069 N. Broadway, Chicago, IL 60640 ("Seller"), and **Illinois Asset Management LLC**, a Wyoming Limited Liability Company, 30 N. Gould Street, Suite 7697, Sheridan WY 82801 ("Buyer")

## RECITALS

WHEREAS, Seller is the owner of the Loans and the Loan Documents (each as defined below); and

WHEREAS, Buyer has agreed to purchase the Loans and the Loan Documents pursuant to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises herein set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Seller and Buyer hereby agree as follows:

## SECTION 1. - DEFINITIONS

For purposes of this Agreement the terms defined in this Article have the meanings indicated, unless the context clearly requires otherwise. As used herein and except as the context otherwise requires, the singular form of a defined term includes the plural form and vice versa.

"Affiliated Relationship" means with respect to any specified Person, a relationship of any kind in which any other Person directly or indirectly controls, is controlled by or is under common control with such specified Person. "Affiliated Relationship" also includes an understanding, arrangement, or agreement (written or oral) between or among two or more Persons.

"Allonge" means the Allonge, to be in the form of Exhibit C attached hereto and incorporated herein.

"Assignment of Mortgage" means the Assignment of Mortgage in the form of Exhibit D attached hereto and incorporated herein.

"Borrower" means any Person, including, without limitation, any borrower, obligor, or guarantor of the Loans, any of the preceding of which is currently obligated to pay and to perform the obligations to be paid and performed by a borrower, obligor, or guarantor of the Loans.

"Business Day" means any day other than a Saturday, Sunday, or holiday observed by the United States government, New York Stock Exchange or the Federal Reserve.

1

"Closing Date" means the date set forth in Section 3.1 herein.

"Cut-Off Date" means February 28, 2019.

"Closing Documents" means the Allonge, the General Assignment and the Assignment of Mortgage.

"Collateral" means the Real Property and any other tangible or intangible property securing the Loans.

"General Assignment" means the General Assignment in the form of Exhibit B hereto.

"Good Funds" means immediately available federal funds.

"Impositions" means any taxes or assessments levied against the Collateral for the Loans, premiums for any insurance maintained in connection with such Collateral, and any other costs or expenses related to such Collateral.

"Loans" means those certain loans evidenced by the Loan Documents.

"Loan Documents" means the documents listed under "Loan Documents" in Exhibit A attached hereto and incorporated herein.

"Loan Schedule" means the list of Loans being sold pursuant to this Agreement as identified on Exhibit E attached hereto.

"Person" means an individual, a corporation, a partnership, a limited liability company, a trust, an unincorporated association, a joint venture (formal or informal) or any other entity.

"Purchase Price" means the sum of **$5,600,000.00** (per Exhibit E), subject to the adjustments set forth in Section 2.2 herein.

"Real Property" means the underlying properties securing the applicable Loan, together with any personal property, fixtures, leases and other property or rights pertaining thereto.

"Seller-Related Parties" means all Persons that control, are controlled by, or are under common control with Seller, together with all directors, officers, employees, agents or other representatives of such Persons.

"Servicing-Released Basis" means the method or basis for the sale of Loans whereby all rights, obligations, liabilities, and responsibilities in connection with the servicing and administration of a loan are released, relinquished, sold, transferred, conveyed and assigned by the seller of the Loans to the buyer.

## SECTION 2. - THE PURCHASE AND SALE OF LOAN DOCUMENTS

2.1    Sale and Purchase of the Loan Documents.

(a)    In consideration of the Purchase Price, and subject to the terms and conditions of this Agreement, Seller agrees to sell, and Buyer agrees to purchase, all of Seller's right, title and interest in and to the Loans and the Loan Documents.

(b)    Simultaneously with Seller's receipt of the Purchase Price from Buyer, Seller shall sell, transfer and assign to Buyer all of Seller's ownership, right, title and interest of any type or kind in and to the Loans and the Loan Documents, in accordance with the terms of this Agreement and the Closing Documents. Except as otherwise expressly set forth herein, the sale, transfer and assignment of the Loans and the Loan Documents is made WITHOUT RECOURSE TO SELLER AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED OF ANY TYPE, KIND OR CHARACTER.

(c)    Except as specifically provided in Section 5, this Agreement is made by Seller without any representations or warranties whatsoever, whether expressed, implied, or imposed by law. Without limiting the generality of the foregoing total exclusion of representations and warranties, this Agreement is made:

(1)    Without any representations or warranties with respect to the genuineness of any signature other than those made by or on behalf of Seller;

(2)    Without any representations or warranties with respect to the collectability of any amount owed to Seller under any of the Loan Documents by any Borrower or any guarantor of such Borrower's obligations to Seller;

(3)    Without any representations as to the financial condition of any Borrower or of any guarantor of such Borrower's obligations to Seller;

(4)    Without any of the representations or warranties described in Article 3 and Article 9 of the Uniform Commercial Code as enacted and in force in the State of Illinois or any other state relevant for purposes of the Loan Documents or Collateral;

(5)    Without any representations or warranties with respect to the legality, validity, sufficiency, or enforceability of any of the Loan Documents;

(6)    Without any representations or warranties with respect to the value, condition, profitability or amount necessary to rehabilitate the Collateral;

(7)    Without any representations or warranties with respect to title or ownership to or of the Collateral, or any portion or part thereof;

(8)    Without any representations or warranties with respect to the validity, enforceability, attachment, priority, or perfection of any security interest, attachment, relief, encumbrance or mortgage included in the Loan Documents, or the compliance with applicable law of any proceedings commenced or followed by Seller with respect to Seller's loan arrangements with the Borrower;

3

(9)     Without any representations or warranties with respect to the existence, value, access to, or condition of the Collateral, including, without limitation, as to any environmental matters (including, without limitation as to the existence of lead paint, asbestos, radon or any other material, hazardous or otherwise), the existence of health, housing, building or other code violations and/or the existence, identity or number of tenants or other occupants at any real estate collateral;

(10)     Without any representations or warranties with respect to ownership of or obligations in respect of any entitlements or other similar rights or benefits attributable to, burdening or otherwise pertaining to the Collateral; and

(11)     Without any representations or warranties with respect to any claims by any Borrower against Seller or claims by third parties against any of the Borrowers or Seller.

(d)     Buyer has been solely responsible for making its own independent investigation of the Loans. Buyer expressly acknowledges that it has independently investigated and examined the Loans, the Loan Documents and any other information, documents, instruments and materials it deemed appropriate, and Buyer had the opportunity, on its own, to examine any other records that might be available to the public from local, county, state, and federal authorities, courts and record–keeping offices, and Buyer has become fully familiar with the status thereof.

(e)     Except as expressly set forth in Section 5, neither Seller nor a Seller-Related Party makes any representation or warranty, whether express or implied, of any type, kind, character or nature whatsoever, as to the content, accuracy, or completeness of any such records.

(f)     Buyer acknowledges that no estoppels or other confirmation of the outstanding amount of the Loans or other information regarding the Loans, the Loan Documents or the Collateral will be provided by any Borrower, principal of such Borrower, guarantor of such Borrower, or other party that is affiliated with any Borrower or has an interest in any of the Collateral.

(g)     Buyer has entered into this transaction after consultation with independent counsel of Buyer's own selection and, with the sole exception of the representations and warranties specifically made in Section 5, and is not relying upon any representation or warranty of Seller in consummating this transaction.

(h)     Buyer hereby expressly acknowledges and agrees that this Agreement is effective as to only the Loan Documents specifically referenced on Exhibit A, and that this Agreement shall not operate as an assignment of any other documents, instruments or agreement which Seller may maintain with any Borrower or with any guarantor or endorser of any of such Borrower's obligations to Seller, or with any other party.

2.2     Purchase Price. The Purchase Price shall be increased by the amount of any protective advances paid by Seller and accrued interest owed by Borrower after the Cut-Off Date prior to the Closing Date, less the combination of (i) principal and interest received by Seller after the Cut-Off Date

4

and before the Closing Date, (ii) late charges and other fees received by the Seller after the Cut-Off Date and before the Closing Date, and (iii) escrow and suspense account balances.

2.3     Payment of Purchase Price.  The Purchase Price shall be paid as follows:

(a)     On the Closing Date, and as a condition to Seller's obligation to deliver the Loans and Loan Documents to Buyer, Buyer shall pay to Seller the Purchase Price by wire transfer of Good Funds.

(b)     Buyer acknowledges and agrees that the Purchase Price is to be paid in full to Seller, without adjustment whatsoever for the amount of outstanding exceptions or matters affecting the Collateral, including, without limitation, taxes (or any other form of taxes or charges or liens whatsoever) and any judgments, liens or building code violations, and Buyer further acknowledges that Buyer has investigated and evaluated the status of any and all outstanding exceptions, liens, and taxes and understands that Seller is not responsible or liable in any way to Buyer for the payment or adjustment thereof.

## SECTION 3. - CLOSING

3.1     **Closing Date.  The closing of the purchase and sale of the Loans and the Loan Documents shall take place on or before February 28, 2019 (the "Closing Date") at a designated office of International Bank of Chicago, or such other time and place as Seller and Purchaser shall mutually agree.**

3.2     Transfers at Closing.  Simultaneous with the execution of this Agreement and as a condition to Seller's obligation to deliver the Loan Documents to Buyer, Buyer will pay the Purchase Price to Seller in such manner described in Section 2.2 and Seller shall deliver the Closing Documents to Buyer.

3.3     Deliveries by Seller of Loan Documents.  Upon Seller's receipt of the Purchase Price, Seller will deliver to Buyer the Loan Documents.

3.4     No Endorsement.  Notwithstanding the delivery of the Allonge by Seller to Buyer, this Agreement does not constitute an endorsement by Seller of any of the Loan Documents. Any attempt to affix this Agreement to any Loan Document shall be without force or effect to alter the nature of this Agreement.

3.5     Post Closing Obligations.  Buyer is responsible for recording (and the costs associated with recording) any necessary documents to evidence, secure or otherwise reflect its right, title and interest in and to the Loans and the Loan Documents. IN NO EVENT SHALL SELLER BE LIABLE FOR BUYER'S FAILURE TO PROPERLY RECORD ANY DOCUMENTS THAT ARE NECESSARY TO EVIDENCE, SECURE OR OTHERWISE REFLECT BUYER'S RIGHT, TITLE AND INTEREST IN AND TO THE LOANS AND THE LOAN DOCUMENTS. Seller may deliver, at its option, any and all notices as it deems advisable or necessary concerning the sale of the Loans and the Loan Documents to Borrower.

3.6     Costs.

(a)     Each party hereto shall pay its own legal fees, and costs incurred in connection with transactions contemplated hereby as well as in connection with the negotiation, execution and delivery of this Agreement.

(b)     Buyer will pay all documentary fees, transfer fees, title company charges, recording fees and other charges incurred in connection with the transfer of ownership of the Loan Documents from Seller to Buyer.

3.7     Recording of Assignment of Mortgage.  Buyer hereby acknowledges and agrees that Seller shall record an Assignment of Mortgage for each of the Loans in the appropriate recording office of the state and county in which the Real Property security such Loan is located (the "Recorder's Office").

## SECTION 4. – BUYER'S REPRESENTATIONS, WARRANTIES, COVENANTS AND ACKNOWLEDGMENTS

4.1     Representations and Warranties of Buyer.  Buyer hereby represents and warrants to Seller that, as of the date hereof, the following are true and accurate statements in all material aspects:

(a)     Authority.  If a corporation or limited liability company or other form of organized entity, Buyer is duly formed, validly existing and in good standing in the jurisdiction of its formation, is duly and legally authorized to enter into this Agreement. Buyer is a "United States person" within the meaning of Paragraph 7701(a)(30) of the Internal Revenue Code, as amended.  Buyer has taken all necessary action to authorize the execution, delivery and performance of this Agreement and has the power and authority to execute and deliver this Agreement and to perform its obligations hereunder. Buyer has complied with all laws, rules, regulations, charter provisions and bylaws necessary to consummate the transactions contemplated hereby and to purchase the Loan Documents, and Buyer's representative is authorized to act on behalf of and bind Buyer to the terms of this Agreement.

(b)     Enforceability.  Assuming due authorization, execution and delivery by Seller, this Agreement and all of the obligations of Buyer hereunder are the legal, valid and binding obligations of Buyer, enforceable against Buyer in accordance with the terms of this Agreement, subject to applicable bankruptcy, insolvency, reorganization, moratorium laws or similar laws or equitable principles generally affecting or limiting the rights of contracting parties.

(c)     Sophisticated Buyer.  Buyer is a sophisticated investor and, except as otherwise provided in this Agreement, Buyer is relying solely on its own investigation of the Loans, the Loan Documents and any other documents, instruments or information it deems appropriate.

(d)     Financial Condition.  Buyer represents and warrants that Buyer has sufficient liquid assets, capital and net worth to consummate the transactions contemplated herein without any contingencies.

6

(c)     Examination of Loan Documents.  Buyer has, to the full extent it deems necessary, examined, investigated and reviewed all documents and records that Buyer deems necessary and appropriate in making its decision to purchase the Loans and the Loan Documents.  Buyer acknowledges that Seller has not made any representations or warranties concerning the Loan Documents, the collectability of the Loans or the value of the Collateral.

(f)     Independent Evaluation.  Buyer has made and relied upon its own evaluation and decision to purchase the Loans as more fully set forth in Section 2.1, and Buyer has not relied upon any oral or written information or statements from Seller.

(g)     Buyer Is Not Affiliated with Borrower.  Buyer does not have an Affiliated Relationship with any Borrower identified in any of the Loans or Loan Documents.  Buyer further represents and warrants that it has no understanding, arrangement, or agreement (oral or otherwise) with any Person identified in the Loans or Loan Documents, the purpose of which understanding, arrangement, or agreement is (i) to pledge, hypothecate, transfer or sell any or all of Buyer's interest in or to any of the Loans or the Loan Documents to any Borrower identified in any the Loans or Loan Documents; or (ii) to restate, supplement or otherwise modify any of the Loan Documents; or (iii) to release, forebear, forgive, or extend any Borrower's obligations under any of the Loan Documents.

4.2     Assumption of Seller's Obligations.  Buyer hereby covenants and acknowledges that, as of the close of business on the date hereof, Buyer shall be deemed to have assumed all of Seller's obligations of any kind whatsoever with respect to the Loans, the Loan Documents, and the Collateral.  Buyer acknowledges that the sale of the Loan Documents by Seller to Buyer is irrevocable and that Buyer shall have no recourse to Seller.

4.3     Indemnification.  To the fullest extent permitted by law, Buyer agrees to defend (with counsel reasonably satisfactory to Seller), protect, indemnify and hold harmless Seller, any parent corporation, affiliated corporation or subsidiary of Seller, and each of their respective officers, directors, employees, attorneys and agents (each, an "Indemnified Party") from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, claims, costs and expenses of any kind or nature (including, without limitation, the disbursements and the reasonable fees of counsel for each Indemnified Party thereto, which shall also include, without limitation, reasonable attorneys' fees and time charges of attorneys who may be employees of Seller or any parent or affiliated corporation of Seller), which may be imposed on, incurred by, or asserted against, any Indemnified Party for any act or omission taken or failed to be taken after the Closing Date relative to the Loans or the Loan Documents (whether direct, indirect or consequential and whether based on any federal, state or local laws or regulations, including, without limitation, securities, environmental laws and commercial laws and regulations, under common law or in equity, or based on contract or otherwise) in any manner relating to or arising out of this Agreement, the Loans, Seller's relationship with the Borrower, or any other guarantor or endorser of the Borrower's obligations, or any act, event or transaction related or attendant thereto, the preparation, execution and delivery of this Agreement, the Loan Documents, the making or issuance and management of the Loans, and the enforcement of rights and remedies under the Loan Documents, including any claims, answers, affirmative defenses, counterclaims or related actions taken by Borrower against any Indemnified Party, any other instruments and documents delivered hereunder

or thereunder. To the extent that the undertaking to indemnify set forth in the preceding sentence may be unenforceable because it violates any law or public policy, Buyer shall satisfy such undertaking to the maximum extent permitted by applicable law. Any liability, obligation, loss, damage, penalty, cost or expense covered by this indemnity shall be paid to such Indemnified Party within five (5) days of written demand, and failing prompt payment, together with interest thereon at a rate of interest equal to ten percent (10%) per annum from the date incurred by such Indemnified Party until paid by Buyer. Buyer, by executing this Agreement where indicated below, acknowledges and agrees that its liability and obligations under this Section shall continue in full force and effect until specifically terminated in writing by a duly authorized officer of Seller.

    4.4    <u>No Reliance upon Information from Seller</u>. Buyer has not relied, in entering into this Agreement, upon any oral or written information from Seller or any of Seller's employees, attorneys, affiliates, agents or representatives, other than the express representations of Seller contained in <u>Section 5</u> of this Agreement. Buyer further acknowledges that no employee or representative of Seller has been authorized to make, and that Buyer has not relied upon, any statements or representations other than those specifically contained in <u>Section 5</u> of this Agreement.

    4.5    <u>No Legal Action in Seller's Name</u>. Buyer warrants, represents and agrees that it will not institute any legal action in the name of Seller or continue to prosecute or defend in the name of Seller any pending legal action; nor shall Buyer intentionally or unintentionally, through misrepresentation or nondisclosure, mislead any person as to, or conceal from any person, the identity of Buyer of the Loans purchased pursuant to this Agreement; NOR SHALL BUYER USE OR REFER TO THE NAME INTERNATIONAL BANK OF CHICAGO, OR ANY OF ITS PREDECESSORS OR SUBSIDIARIES OR ANY NAME DERIVED THEREFROM OR CONFUSINGLY SIMILAR THEREWITH TO PROMOTE BUYER'S COLLECTION OR MANAGEMENT THEREOF, OR MARKETING, ADVERTISING, SALE OR TRANSFER OF ANY ASSET; provided, however, that nothing herein shall be deemed to preclude Buyer from disclosing the fact that such Loan or Loans were acquired from Seller solely to the extent necessary to prosecute Buyer's rights and remedies in connection with the Loan Documents. Any settlement whether judicial or non judicial by Buyer shall include a release of Seller and its affiliated companies, representatives, employees, directors, and agents of any claims by the Borrower and/or any guarantor. Provided however, nothing in this Section shall preclude Buyer from referring to Seller in collections and legal proceedings to the extent necessary or required by applicable legal procedure.

    4.6    <u>Servicing After the Closing Date</u>.

        (a)    The Loans and the Loan Documents will be sold, transferred, conveyed, and assigned to Buyer on a Servicing-Released Basis. As of the close of business on the date hereof, all rights, obligations, liabilities, and responsibilities with respect to the servicing and administration of the Loans and the Loan Documents, including any obligations arising from or related to the future issuance of letters of credit as provided for in the Loan Documents, will pass to Buyer, and Seller will be discharged and released from all obligations, liability or responsibility therefor. Buyer hereby acknowledges that, because the Loans may include provisions for Impositions, negative amortization and/or balloon payments of principal, the servicing of the Loans might be affected accordingly.

(b)     As of the close of business on the date hereof, Buyer will be solely responsible and liable for compliance with all applicable laws, rules and regulations governing the ownership, servicing or administration of the Loans and the Loan Documents, including, without limitation, the obligation to notify Borrower, guarantors or sureties of the transfer of the servicing rights from Seller to Buyer. If requested by Buyer, Seller will participate in a notice of transfer of service that is drafted by Buyer, approved by Seller and directed to Borrower, guarantors and sureties. Notwithstanding anything contained herein to the contrary, Seller may deliver notice and other correspondence, including notice of transfer of service, directed to Borrower and any guarantors or sureties, relating to the sale of the Loans and Loan Documents to Borrower as Seller deems necessary in its sole and absolute discretion to comply with any rules and regulations that may be applicable to it, as determined by Seller in its sole and absolute discretion.

(c)     Under no circumstances will Seller be a fiduciary of Buyer with respect to the Loans. Seller has no liability to Buyer for deficiencies with regard to servicing the Loans. Without limiting the foregoing, Seller also shall have no liability for actions taken at the request of, or with the consent of, Buyer, and no such action will limit in any way Buyer's obligation to purchase the related Loan. Notwithstanding any provision in this Agreement to the contrary, Seller has no obligation to make any advance or to pay any Imposition from its own funds.

4.7     Survival of Representations, Warranties, and Covenants. The representations, warranties and covenants contained in this Section 4 shall survive the closing.

## SECTION 5. – SELLER'S REPRESENTATIONS, WARRANTIES, COVENANTS AND ACKNOWLEDGEMENTS

5.1     Representations and Warranties of Seller. Seller hereby represents and warrants to Buyer that, as of the date hereof, the following are true and accurate statements in all material aspects:

(a)     Organization; Existence. Seller is duly formed and validly existing in the jurisdiction of its formation, and Seller is in good standing under the laws of the jurisdiction of its formation or organization. Seller is duly and legally authorized to enter into this Agreement, and Seller's representative is authorized to act on behalf of and bind Seller to the terms of this Agreement.

(b)     Authority. Seller has the full power, authority and legal right to hold, transfer and convey the Loans and to execute and deliver this Agreement (and all agreements executed and delivered by Seller in connection herewith) and to perform all transactions contemplated by this Agreement (and all agreements executed and delivered by Seller in connection herewith). Seller has duly authorized the execution, delivery and performance of this Agreement (and all agreements executed and delivered by Seller in connection herewith), and has duly executed and delivered this Agreement (and all agreements executed and delivered by Seller in connection herewith). This Agreement (and each agreement executed and delivered by Seller in connection herewith) constitutes the legal, valid and binding obligation of Seller enforceable in accordance with its terms,

9

except as such enforcement may be limited by bankruptcy, insolvency, fraudulent conveyance, reorganization, receivership, moratorium or other laws relating to or affecting the rights of creditors generally and by general principles of equity including principles of commercial reasonableness, good faith and fair dealing (regardless of whether such enforcement is considered in a proceeding in equity or at law).

(c)     Enforceability.   Assuming due authorization, execution and delivery by Buyer, this Agreement and all the obligations of Seller hereunder are the legal, valid and binding obligations of Seller, enforceable against Seller in accordance with the terms of this Agreement, subject to applicable bankruptcy, insolvency, reorganization, moratorium laws or similar laws or equitable principles generally affecting or limiting the rights of contracting parties.

(d)     No Conflicts.  Neither the execution and delivery of this Agreement, nor the fulfillment of or compliance with the terms and conditions of this Agreement by Seller, will (i) conflict with or result in a breach of any of the terms, conditions or provisions of Seller's organizational documents or any agreement or instrument to which Seller is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing; (ii) conflict with or result in a breach of any legal restriction if compliance therewith is necessary (A) to ensure the enforceability of this Agreement or the Loans, or (B) for Seller to perform its obligations under this Agreement in accordance with the terms hereof; or (iii) result in the violation of any law, rule, regulation, order, judgment or decree to which Seller is subject if compliance therewith is necessary (A) to ensure the enforceability of this Agreement or the Loans or (B) for Seller to perform its obligations under this Agreement in accordance with the terms hereof.

(e)     No Consent Required.  No consent, approval, authorization or order of, or registration or filing with, or notice to, any court or governmental agency or body having jurisdiction or regulatory authority over Seller is required for (i) Seller's execution and delivery of this Agreement (and each agreement executed and delivered by Seller in connection herewith), (ii) Seller's transfer and assignment of the Loans, or (iii) the consummation of the transactions contemplated by this Agreement (and each agreement executed and delivered by Seller in connection herewith) or, to the extent so required, such consent, approval, authorization, order, registration, filing or notice has been obtained, made or given (as applicable), except that Seller may not be duly qualified to transact business as a foreign corporation or licensed in one or more states if such qualification or licensing is not necessary (A) to ensure the enforceability of each Loan or (B) for Seller to perform its obligations under this Agreement in accordance with the terms hereof.

5.2     Representations and Warranties of Seller as to the Loans.  With respect to the Loan Documents, Seller hereby represents and warrants to Buyer that, as of the date hereof, Seller has full right and authority to sell, assign and transfer the Loan Documents to Buyer, as follows:

(1)     Loan Schedule.  The information set forth in the Loan Schedule is true, complete and correct in all material respects as of the Closing Date.

10

(2)     Title. Seller is the sole legal owner and beneficial owner of each Loan, and has the full right and authority to sell and to sign each Loan hereunder.

(3)     Equity Participation; Participation Interest. No Loan contains any equity participation by Seller, and each Loan is a whole Loan and not a participation certificate. Seller has no ownership interest in the related Real Property or any Borrower other than in the Loan which is being sold and assigned by Seller hereunder; no Borrower is an affiliate of Seller, and Seller maintains no ongoing relationship with the Borrower on any Loan.

(4)     Claim. To Seller's actual knowledge, without any independent inquiry, there is no valid offset, defense, abatement, counterclaim or right of rescission in favor of any Borrower or other person with respect to any of the Loans, except as set forth on Exhibit F hereto.

(5)     No Modification Release or Satisfaction. None of the Loans have been modified, altered, satisfied, cancelled, subordinated or rescinded, except as otherwise set forth on Exhibit G hereto, and the Real Property securing any mortgage has not been released in the lien of such mortgage.

(6)     Seller's Possession. Seller's Loan Documents in its possession are complete in all material respects and Seller has not amended, modified or supplemented any of the Loan Documents except as otherwise disclosed on Exhibit H.

(7)     No Condemnation. To Seller's actual knowledge, with any independent inquiry, there are no proceedings for the total or partial condemnation of any of the Real Property relative to any of the Loans.

(8)     No Mechanics Liens. To the Seller's actual knowledge, without any independent inquiry, each Real Property which secures any of the Loans is, as of the Closing Date, free and clear of any mechanics and materialmen's lien or liens and to the Seller's actual knowledge, without any independent inquiry, there are no rights outstanding under law, which could give rise to any such liens.

(9)     Loan Documents. The Loan Documents contain the agreements, instruments and documents described in Exhibit A to this Agreement.

(10)    No Notice of Bankruptcy. Seller has no actual knowledge, without any independent inquiry, that any Borrower of any of the Loans is a debtor in any state or federal bankruptcy, reorganization or insolvency proceeding.

5.3    Survival of Representations, Warranties and Covenants. The representations, warranties and covenants contained in this Section 5 shall survive the Closing.

## SECTION 6. - MISCELLANEOUS PROVISIONS

6.1    Timing. TIME IS OF THE ESSENCE UNDER THE TERMS OF THIS AGREEMENT.

11

6.2    Brokerage Commissions and Finder's Fees. Each party to this Agreement warrants to the other that no person or entity is entitled to any commission, finder's fee, acquisition fee or other brokerage-type compensation (collectively, a "Commission") based upon the acts of that party with respect to the transactions contemplated by this Agreement. Each party hereby agrees to indemnify, defend and hold harmless the other party from and against any and all loss, cost, liability or expense (including, without limitation, commissions and attorneys' fees) resulting from any claim for a Commission by any other person or entity based upon such acts.

6.3    Rights Cumulative; Waivers. The rights of each of the parties under this Agreement are cumulative and may be exercised as often as any party considers appropriate, subject to the time limitations set forth in this Agreement and by applicable law. The rights of each of the parties hereunder shall not be capable of being waived or varied except by an express waiver or variation in writing and signed by both parties. Any failure to exercise or any delay in exercising any such rights shall not operate as a waiver or variation of that right or any other right. Any defective or partial exercise of any such rights shall not preclude any other or further exercise of that right or any other right. No act or course of conduct or negotiation on the part of any party shall in any way preclude such party from exercising any right or otherwise constitute a suspension or any variation of any such right.

6.4    WAIVER OF JURY TRIAL. SELLER AND BUYER BOTH IRREVOCABLY WAIVE ANY AND ALL RIGHT THAT EITHER PARTY MIGHT HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS AGREEMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED BY THIS AGREEMENT.    SELLER AND BUYER ACKNOWLEDGE THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.

6.5    Notices. Unless otherwise provided for herein, all notices or other communication required or permitted hereunder shall be in writing (including a writing delivered by facsimile transmission) to such party and delivered at such party's address or facsimile number set forth on the signature page hereof. Such notice shall be deemed to have been duly given (a) when delivered, if sent by registered or certified mail (return receipt requested); (b) when delivered, if delivered personally or by facsimile; or (c) on the following Business Day, if sent by overnight mail or overnight courier.

6.6    Benefit; Successors Bound. This Agreement (including the exhibits and schedules hereto) and the terms, covenants, conditions, provisions, obligations, undertakings, rights and benefits hereof shall be binding upon, and shall inure to the benefit of, the undersigned parties and their respective heirs, executors, administrators, representatives, successors, and assigns.

6.7    Assistance of Third Parties. Buyer hereby acknowledges, confirms and understands that Seller has no responsibility or liability whatsoever to Buyer arising out of or related to any third parties' failure to assist or cooperate with Buyer. Seller is not liable for the potential failure or refusal of third parties to assist or cooperate with Buyer or Seller in the effective transfer, assignment, and conveyance of the purchased Loan Documents.

6.8    Governing Law and Consent to Jurisdiction. This Agreement, and any and all claims, disputes or actions arising hereunder or in any way relating hereto, shall be construed, and the rights and obligations of Seller and Buyer hereunder determined, in accordance with the law of the State of Illinois, without regard to the principles of such laws respecting conflicts of laws. Buyer consents to jurisdiction

in United States federal courts of the Northern District of Illinois and in the Circuit Court of Cook County, whichever might be applicable.

6.9    Prior Understandings.    This Agreement supersedes any and all prior discussions and agreements between Seller and Buyer with respect to the purchase of the Loans and the Loan Documents contained herein, and this Agreement contains the sole and entire understanding between the parties hereto with respect to the transactions contemplated herein.

6.10    Integrated Agreement.    This Agreement (including the exhibits and schedules hereto) constitutes the final complete expression of the intent and understanding of Buyer and Seller. This Agreement (including the exhibits and schedules hereto) shall not be altered, modified or amended, except by a subsequent writing that is signed by Buyer and Seller.

6.11    Severability.    Each part of this Agreement is intended to be severable. If any term, covenant, condition or provision hereof is held to be unlawful, invalid, or unenforceable for any reason whatsoever, and such illegality, invalidity, or unenforceability does not affect the remaining parts of this Agreement, then all such remaining parts hereof shall be valid and enforceable and shall have full force and effect as if the invalid or unenforceable part had not been included.

6.12    Confidentiality.    Each party will keep strictly confidential the information contained in this Agreement (including, without limitation, the Purchase Price), discussed during this transaction, and supplied by the other party in connection with this Agreement, except only as such disclosure is required by applicable law or regulation; provided, however, that if disclosure is made pursuant to applicable law or regulation, then the disclosing party shall be responsible and liable for ensuring that the recipients of such disclosed information maintain the confidentiality of the disclosed information and use the disclosed information only as expressly permitted in this Section 6.12.

6.13    Headings.    The headings of the articles and sections contained in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provision hereof.

6.14    Counterparts; Facsimile Signatures.    This Agreement may be executed in any number of counterparts, each of which shall constitute one and the same instrument, and any party hereto may execute this Agreement by signing any such counterpart. This Agreement may be executed by facsimile or scanned signatures; any signed Agreement or signature page to this Agreement that is transmitted by facsimile or in the portable document format (.pdf) shall be treated in all manners and respects as an original Agreement or signature page.

[Signature page follows]

13

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and date first above written.

**SELLER:**

INTERNATIONAL BANK OF CHICAGO

By: _____

Name: Thomas A. Gehrke, Jr.

Title: Chief Lending Officer

Address:
5069 N. Broadway
Chicago, IL 60640

**BUYER:**

ILLINOIS ASSET MANAGEMENT LLC

By: _____

Name: ABDUL Q ARIF

Title: PRESIDENT

Address:
30 N. Gould Street, Suite 7697
Sheridan WY 82801

14

## EXHIBIT A

## LOAN DOCUMENTS

The following documents or instruments with respect to each Loan, (but only to the extent such documents are in the possession of the Seller) will be delivered to the Buyer on the Closing Date.

(i)     the original of the related Note;

(ii)     the original recorded Mortgage or a copy thereof certified by the title insurance company, the closing agent or the applicable public recording office to be in the form in which executed or submitted for recording;

(iii)     the original Environmental Indemnity Agreement;

(iv)     the acknowledgment copy of each Form UCC-1 financing statement (file stamped to show the filing or recording thereof in the applicable public filing or recording office), if any, filed with respect to personal property or fixtures constituting a part of the Real Property;

(v)     the original lender's title insurance policy with respect to the Mortgage (or the marked-up title commitment, the original pro forma or specimen title insurance policy with respect to the Mortgage expressly issued to Seller and its successors and assigns), together with any endorsements issued, or to be issued, with respect thereto;

(vi)     the original recorded Assignment of Leases and Rents (if separate from the Mortgage) or a copy thereof certified by the title insurance company, the closing agent or the applicable public recording office to be in the form in which executed or submitted for recording;

(vii)     the original environmental site assessment report or reports with respect to the Real Property made in connection with origination of the Loan;

(viii)     any other written agreements, instruments or documents securing or otherwise related to the Loan, including, without limitation, guaranties with respect to the Loan, loan agreements, any lock box agreement, any subordination, non-disturbance and attornment agreement;

(ix)     any and all amendments, modifications and supplements to, and waivers related to, any of the foregoing;

(x)     the appraisals, architectural and engineering reports, surveys, title reports, powers of attorney, all other third party studies and surveys, property condition reports, leases, tenant estoppel certificates, zoning comfort letters, opinions of Borrower's counsel, closing/settlement statements and other documents obtained or maintained in connection with Seller's origination or servicing of each Loan;

15

(xi)    to the extent available:  tax receipts, insurance premium receipts, insurance certificates, ledger sheets, payment history from date of origination, insurance claim files, correspondence, current and historical computerized data files, and all other processing, underwriting and closing papers and records which are customarily contained in a mortgage loan file and which are required to document the Loan or to service the Loan; and

(xii)    the organizational documents for the Borrower and its constituent members and resolutions regarding the Loan; and

(xiii)   to the extent in Seller's possession and/or control, a copy of any documents issued, filed or prepared in connection with any court proceeding commenced with respect to any Loan, including, without limitation, any complaint, motion, deposition transcript, directive or similar document.

16

## EXHIBIT B

### GENERAL ASSIGNMENT

THIS GENERAL ASSIGNMENT (this "Assignment") is made as of this 28th day of February, 2019, by **INTERNATIONAL BANK OF CHICAGO**, with an address of 5069 North Broadway, Chicago, Illinois 60640 ("Assignor") in favor of **Illinois Asset Management LLC**, having a place of business at 30 N. Gould Street, Suite 7697, Sheridan WY 82801 ("Assignee").

### RECITALS

A.     Assignor and Assignee have entered into that certain Non- Recourse Loan Sale Agreement dated 2/28, 2019 (the "Agreement") whereby Assignor agrees to convey to Assignee all of Assignor's right, title and interest in and to the Loan Documents (as defined in the Agreement) that are described on Exhibit A hereto. Assignee agrees to accept the Loan Documents on the terms and conditions stated in the Agreement.

B.     Pursuant to the Agreement, Assignor desires to execute this Assignment in favor of Assignee.

### AGREEMENT

NOW, THEREFORE, in consideration of the sum of TEN and 00/100 DOLLARS ($10.00) and other good and valuable consideration, the mutual receipt and legal sufficiency of which are hereby acknowledged, Assignor hereby agrees as follows:

(a)     Definitions. Capitalized terms used but not defined herein shall have the same meaning as set forth in the Agreement.

(b)     Assignment. Assignor hereby sells, assigns, transfers and conveys to Assignee, without any representation, warranty or recourse other than as specifically provided for in the Agreement, all of Assignor's right, title and interest in and to the Loan Documents.

(c)     Successors. This Assignment shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns.

(d)     Governing Law. This Assignment shall be governed by the laws of the State of Illinois.

(e)     WAIVER OF JURY TRIAL. SELLER AND BUYER BOTH IRREVOCABLY WAIVE ANY AND ALL RIGHT EITHER PARTY MIGHT HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS ASSIGNMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS ASSIGNMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. EACH OF SELLER AND BUYER ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.

17

(f)    <u>Construction</u>.    Unless the context otherwise requires, singular nouns and pronouns, when used herein, shall be deemed to include the plural of such noun or pronoun and pronouns of one gender shall be deemed to include the equivalent pronoun of the other gender.

IN WITNESS WHEREOF, Assignor has executed this Assignment as of the date first above written.

<u>ASSIGNOR</u>:

**INTERNATIONAL BANK OF CHICAGO**

Name: Thomas A. Gehrke Jr

Title: Chief Lending Officer

18

## EXHIBIT C

### ALLONGE TO A CERTAIN PROMISSORY NOTE DATED JUNE 22, 2016, MADE BY PLATFORM BRADLEY LLC TO INTERNATIONAL BANK OF CHICAGO IN THE ORIGINAL MAXIMUM PRINCIPAL AMOUNT OF $5,600,000.00

For value received, pay to the order of **ILLINOIS ASSET MANAGEMENT LLC** (the "Assignee"), <u>WITHOUT RECOURSE</u>, and subject to and in accordance with the terms and conditions of that certain Non-Recourse Loan Sale Agreement dated as of _2/28/19_____, 2018 between International Bank of Chicago, and the Assignee.

INTERNATIONAL BANK OF CHICAGO

By: _____
Name: _Thomas A. Gehrke Jr._
Title: _Chief Lending Officer_
Date: ~~February~~ _28_, 2019
_February 28_

STATE OF ILLINOIS )
                  ) SS.
COUNTY OF COOK )

I, _ELIZA C. ALEMAN_____, a Notary Public in and for said County in the State aforesaid, DO HEREBY CERTIFY that _THOMAS A GEHRKE_, as _C.L.O._ of International Bank of Chicago, in his personal capacity, is personally known to me to be the same person whose name are subscribed to the foregoing instrument and such person appeared before me this day in person and they signed and delivered the said instrument as the free and voluntary act of said corporation and his own free and voluntary act, for the uses and purposes therein set forth.

GIVEN under my hand and notarial seal on _FEBRUARY 28TH_, 2019

_____
Notary Public

My Commission Expires: _6-4-2022_

"OFFICIAL SEAL"
ELIZA C ALEMAN
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 06/04/2022

19

## EXHIBIT D

THIS INSTRUMENT WAS PREPARED BY:

_____

_____

Attn:_____

AFTER RECORDING RETURN TO:

_____

_____

*This space reserved for Recorders use only.*

## ASSIGNMENT OF MORTGAGE

INTERNATIONAL BANK OF CHICAGO, with an address of 5069 North Broadway, Chicago, Illinois 60640 (the "Assignor"), holder of:

hereby assigns and transfers all of its right title and interest in the above-referenced documents to ILLINOIS ASSET MANAGEMENT LLC. (the "Assignee") WITHOUT RECOURSE, and subject to and in accordance with the terms and conditions of that certain Non-Recourse Loan Sale Agreement dated as of __2/2/19__, 2019, by and among the Assignor and the Assignee.

[the remainder of this page is intentionally left blank]

20

IN WITNESS WHEREOF, the Assignor caused this Assignment of Mortgage to be executed as of  2/28 , 2019.

INTERNATIONAL     BANK     OF CHICAGO

Name: Thomas A. Gehrke Jr.

Title: Chief Lending Officer

STATE OF    ILLINOIS

COUNTY OF COOK

On this 28 day of FEBRUARY, 2019, before me, the undersigned notary public, personally appeared THOMAS A GEHRKE JR as CHIEF LENDING OFF, for International Bank of Chicago, proved to me through satisfactory evidence of identification to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

"OFFICIAL SEAL"
ELIZA C ALEMAN
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 06/04/2022

(Official signature and seal of notary)

My commission expires: 6-4-2022

21

Exhibit A

Legal Description

THE NORTH 660 FEET OF THE EAST ½ OF THE NORTHEAST ¼ OF SECTION 26, TOWNSHIP 44 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN (EXCEPT THAT PART THEREOF LYING WESTERLY OF THE EASTERLY LINE OF THE TRACT OF LAND TAKEN FOR TOLLWAY PURPOSES IN PROCEEDINGS HAD IN LAKE COUNTY, ILLINOIS AS CASE NUMBER 13915), IN LAKE COUNTY, ILLINOIS.

Property Address: 27944 North Bradley Road, Green Oaks, IL 60048

PIN:   11-26-200-005-0000

22

## EXHIBIT E

### LOAN SCHEDULE

1.   **Loan Number 45▓▓▓▓**

   **Borrower: PLATFORM BRADLEY LLC**

   **Principal Balance: $5,600,000.00**

## EXHIBIT F

## LIST OF CLAIMS

## NONE

## EXHIBIT G

## MODIFICATIONS; RELEASE OF SATISFACTION

## NONE

**EXHIBIT H**

**SELLER'S POSSESSION**

**NONE**

## GENERAL ASSIGNMENT

THIS GENERAL ASSIGNMENT (this "Assignment") is made as of this 28th day of February, 2019, by INTERNATIONAL BANK OF CHICAGO, with an address of 5069 North Broadway, Chicago, Illinois 60640 ("Assignor") in favor of Illinois Asset Management LLC, having a place of business at 30 N. Gould Street, Suite 7697, Sheridan WY 82801 ("Assignee").

### RECITALS

A.     Assignor and Assignee have entered into that certain Non- Recourse Loan Sale Agreement dated June 8, 2018 (the "Agreement") whereby Assignor agrees to convey to Assignee all of Assignor's right, title and interest in and to the Loan Documents (as defined in the Agreement) that are described on Exhibit A hereto. Assignee agrees to accept the Loan Documents on the terms and conditions stated in the Agreement.

B.     Pursuant to the Agreement, Assignor desires to execute this Assignment in favor of Assignee.

### AGREEMENT

NOW, THEREFORE, in consideration of the sum of TEN and 00/100 DOLLARS ($10.00) and other good and valuable consideration, the mutual receipt and legal sufficiency of which are hereby acknowledged, Assignor hereby agrees as follows:

(a)     Definitions. Capitalized terms used but not defined herein shall have the same meaning as set forth in the Agreement.

(b)     Assignment. Assignor hereby sells, assigns, transfers and conveys to Assignee, without any representation, warranty or recourse other than as specifically provided for in the Agreement, all of Assignor's right, title and interest in and to the Loan Documents.

(c)     Successors. This Assignment shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns.

(d)     Governing Law. This Assignment shall be governed by the laws of the State of Illinois.

(e)     WAIVER OF JURY TRIAL. SELLER AND BUYER BOTH IRREVOCABLY WAIVE ANY AND ALL RIGHT EITHER PARTY MIGHT HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS ASSIGNMENT, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS ASSIGNMENT OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. EACH OF SELLER AND BUYER ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.

(f)   Construction.  Unless the context otherwise requires, singular nouns and pronouns, when used herein, shall be deemed to include the plural of such noun or pronoun and pronouns of one gender shall be deemed to include the equivalent pronoun of the other gender.

IN WITNESS WHEREOF, Assignor has executed this Assignment as of the date first above written.

**ASSIGNOR:**

**INTERNATIONAL BANK OF CHICAGO**

By: _____

Name: _____

Title: _____

### EXHIBIT A

### LOAN DOCUMENTS

The following documents or instruments with respect to each Loan, (but only to the extent such documents are in the possession of the Seller) will be delivered to the Buyer on the Closing Date.

(i)     the original of the related Note;

(ii)    the original recorded Mortgage or a copy thereof certified by the title insurance company, the closing agent or the applicable public recording office to be in the form in which executed or submitted for recording;

(iii)   the original Environmental Indemnity Agreement;

(iv)    the acknowledgment copy of each Form UCC-1 financing statement (file stamped to show the filing or recording thereof in the applicable public filing or recording office), if any, filed with respect to personal property or fixtures constituting a part of the Real Property;

(v)     the original lender's title insurance policy with respect to the Mortgage (or the marked-up title commitment, the original pro forma or specimen title insurance policy with respect to the Mortgage expressly issued to Seller and its successors and assigns), together with any endorsements issued, or to be issued, with respect thereto;

(vi)    the original recorded Assignment of Leases and Rents (if separate from the Mortgage) or a copy thereof certified by the title insurance company, the closing agent or the applicable public recording office to be in the form in which executed or submitted for recording;

(vii)   the original environmental site assessment report or reports with respect to the Real Property made in connection with origination of the Loan;

(viii)  any other written agreements, instruments or documents securing or otherwise related to the Loan, including, without limitation, guaranties with respect to the Loan, loan agreements, any lock box agreement, any subordination, non-disturbance and attornment agreement;

(ix)    any and all amendments, modifications and supplements to, and waivers related to, any of the foregoing;

(x)     the appraisals, architectural and engineering reports, surveys, title reports, powers of attorney, all other third party studies and surveys, property condition reports, leases, tenant estoppel certificates, zoning comfort letters, opinions of Borrower's counsel, closing/settlement statements and other documents obtained or maintained in connection with Seller's origination or servicing of each Loan;.

(xi)    to the extent available: tax receipts, insurance premium receipts, insurance certificates, ledger sheets, payment history from date of origination, insurance claim files, correspondence, current and historical computerized data files, and all other processing, underwriting and closing papers and records which are customarily contained in a mortgage loan file and which are required to document the Loan or to service the Loan; and

(xii)   the organizational documents for the Borrower and its constituent members and resolutions regarding the Loan; and

(xiii)  to the extent in Seller's possession and/or control, a copy of any documents issued, filed or prepared in connection with any court proceeding commenced with respect to any Loan, including, without limitation, any complaint, motion, deposition transcript, directive or similar document.

ALLONGE TO A CERTAIN PROMISSORY NOTE DATED JUNE 22, 2016, MADE BY PLATFORM BRADLEY LLC TO INTERNATIONAL BANK OF CHICAGO IN THE ORIGINAL MAXIMUM PRINCIPAL AMOUNT OF $5,600,000.00

For value received, pay to the order of ILLINOIS ASSET MANAGEMENT LLC (the "Assignee"), WITHOUT RECOURSE, and subject to and in accordance with the terms and conditions of that certain Non-Recourse Loan Sale Agreement dated as of February 28, 2019 between International Bank of Chicago, and the Assignee.

INTERNATIONAL BANK OF CHICAGO

By: _____

Name: Thomas A. Gehrke Jr.

Title: Chief Lending Officer

Date: February 28, 2019

STATE OF ILLINOIS          )

                           ) SS.

COUNTY OF COOK             )

I, _ELIZA C. ALEMAN_____, a Notary Public in and for said County in the State aforesaid, DO HEREBY CERTIFY that _THOMAS A. GEORGE_ as _CEO_____ of International Bank of Chicago, in his personal capacity, is personally known to me to be the same person whose name are subscribed to the foregoing instrument and such person appeared before me this day in person and they signed and delivered the said instrument as the free and voluntary act of said corporation and his own free and voluntary act, for the uses and purposes therein set forth.


GIVEN under my hand and notarial seal on _FEBRUARY 28_, 2019.

Notary Public

My Commission Expires: _6-4-2022_

"OFFICIAL SEAL"
ELIZA C ALEMAN
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 06/04/2022

This instrument prepared by and after
Recording return to:
John J. Swiess, Attorney at Law
1333 Burr Ridge Parkway, Ste. 200
Burr Ridge, IL 60527

## ASSIGNMENT OF MORTGAGE

INTERNATIONAL BANK OF CHICAGO, with an address of 5069 North Broadway,
Chicago, Illinois 60640 (the "Assignor"), holder of:

Mortgage dated June 22, 2016 from Platform Bradley LLC, an Illinois limited liability
company given to International Bank of Chicago to secure an indebtedness of
$5,600,000.00, and recorded June 24, 2016 in the Recorder's Office of Lake County, Illinois
as Document Number 7303494;

Promissory Note dated June 22, 2016 in the principal amount of $5,600,000.00 from
Platform Bradley LLC, an Illinois limited liability company to International Bank of
Chicago;

Assignment of Rents dated June 22, 2016 and recorded June 24, 2016 in the Recorder's
Office of Lake County, Illinois as Document Number 7303511 from Platform Bradley LLC,
an Illinois limited liability company given to International Bank of Chicago to further
secure the Mortgage recorded as Document Number 7303494,

hereby assigns and transfers all of its right title and interest in the above-referenced documents to
ILLINOIS ASSET MANAGEMENT LLC (the "Assignee") WITHOUT RECOURSE, and
subject to and in accordance with the terms and conditions of that certain Non-Recourse Loan
Sale Agreement dated as of February 28, 2019, by and among the Assignor and the Assignee.

IN WITNESS WHEREOF, the Assignor caused this Assignment of Mortgage to be executed as of February 28, 2019.

INTERNATIONAL BANK OF CHICAGO

By: _Thomas A. Gehrke_

Name: _Thomas A. Gehrke Jr_

Title: _Chief Lending Officer._

STATE OF   ILLINOIS

COUNTY OF COOK

On this _28_ day of _FEBRUARY_, 2019, before me, the undersigned notary public, personally appeared _THOMAS A. GEHRKE, SR_, as _CHIEF LENDING OFFICER_ for International Bank of Chicago, proved to me through satisfactory evidence of identification to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

_(signature)_

(Official signature and seal of notary)

"OFFICIAL SEAL"
ELIZA C ALEMAN
NOTARY PUBLIC, STATE OF ILLINOIS
My Commission Expires 06/04/2022

My commission expires: _6-4-2022_

Exhibit A

Legal Description

THE NORTH 660 FEET OF THE EAST ½ OF THE NORTHEAST ¼ OF SECTION 26, TOWNSHIP 44 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN (EXCEPT THAT PART THEREOF LYING WESTERLY OF THE EASTERLY LINE OF THE TRACT OF LAND TAKEN FOR TOLLWAY PURPOSES IN PROCEEDINGS HAD IN LAKE COUNTY, ILLINOIS AS CASE NUMBER 13915), IN LAKE COUNTY, ILLINOIS.

Property Address: 27944 North Bradley Road, Green Oaks, IL 60048

PIN:   11-26-200-005-0000



**International Bank**
of Chicago

January 24, 2018

Platform Bradley, LLC
600 Waukegan Rd.
Suite 129
Northbrook, IL 60062

Mr. Scott Krone                     Mr. Subhash Shah
631 Lake Av.                        2803 N. Penstemon Ct.
Wilmette, IL 60091                  Wichita, KS 67226

Mr. Muthukumar Vellaichamy
729 N. Bedford St.
Wichita, KS 67206

RE:     Loan #454■, Platform Bradley, LLC – Demand Letter

Dear Messrs. Shah, Krone and Vellaichamy:

Based on the payment default provisions in the Promissory Note for the above referenced loan,
International Bank of Chicago hereby declares your loan in default. The full payoff amount of
$5,664,872.26 is due within 10 days from the date of this letter. If the bank does not receive the full
amount due within that timeframe, it will take any and all steps necessary to collect the amount
required to satisfy the loan in full, including, but not limited to, collection on personal guarantees and
foreclosure and sale of real estate and company assets.

In addition, interest will continue to accrue at the default rate of interest, **15%**, as stated in your
Promissory Note.

I can be reached at (847) 920-1400.

Thomas A. Gehrke, Jr.
Chief Lending Officer


