IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ILLINOIS ASSET MANAGEMENT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 19-cv-1912 |
| | ) | |
| SCOTT J. KRONE, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT SCOTT J. KRONE'S REPLY IN
SUPPORT OF HIS MOTION TO OPEN THE JUDGMENT
BY CONFESSION AND STAY ENFORCEMENT**

Defendant, SCOTT J. KRONE, through his undersigned attorneys, and for his Reply in support of his Motion to Open the Judgment by Confession and Stay Enforcement of the Judgment pursuant to Fed.R.Civ.P. 59 and Illinois Supreme Court Rule 276, states the following.

**I.    The Motion Is Procedurally Appropriate.[1]**

Plaintiff first argues that Krone's motion is not properly supported by an affidavit. The argument is without merit, because Krone provided the court with a verified complaint (which he re-verified pursuant 28 U.S.C. 1746), as well as the verified motion itself, also pursuant to Section 1746, and a verified answer to the complaint. This satisfies the rule's affidavit requirement. *Turner v. Smiley*, 8 Ill. App. 3d 388, 390 (1st Dist. 1972) (court found strict compliance with Rule 276 not required as long as the defendant's sworn petition was in substantial compliance with the rule and contained the essential substantive requirements, disclosing a *prima facie* defense on the

---

[1] Plaintiff also takes issue with whether Fed.R.Civ.P 59 or 60 is the appropriate vehicle for a motion to open a confessed judgment under Illinois law. Krone found one case in this district discussing Rule 59 in a motion to open a confessed judgment, *see Citibank, N.A. v. Bearcat Tire, A.G.*, 550 F.Supp. 148 (N.D.Ill. 1982), and another applying Rule 60 for a stay of execution but not to open a judgment, *Colonial Bank and Trust, Co. v. Cahill*, 424 F. Supp. 1200 (N.D.Ill. 1976). The cases cited by Plaintiff are from other circuits.

1

merits to the claim). This is consistent with the use of verified pleadings in both state and federal court in place of affidavits. *Johnke v. Espinal-Quiroz*, 2017 WL 3620745, *2 (N.D.Ill. Aug. 23, 2017) (discussing uses of and differences between 735 ILCS 5/1-109 and 28 U.S.C 1746 and noting an unsworn declaration which meets the applicable statutory requirement may be used in lieu of a sworn affidavit).

Plaintiff next argues, without citing any authority, that Krone's motion does not properly address or meet the requirements of Rule 276, but instead "obfuscates" the proper analysis by identifying actions of Krone's co-managers and owners of Platform Bradley LLC, his co-guarantors and Plaintiff's own president and purported sole owner. (Dkt. #30, p. 1). In Plaintiff's view, it owes no fiduciary duty to Krone and in any event the events laid out in Krone's motion occurred after the guarantee was signed. Aside from citing zero authority in support of this argument, it misses the point. Krone never argued that Plaintiff owes a fiduciary duty to him, but rather that Plaintiff participated with Krone's co-managers, co-guarantors and Arif, Plaintiff's president and purported sole owner, to force Krone out of as a manager of two companies. They did so by using Arif's company, Plaintiff, to purchase Bradley's debt for the sole purpose of selectively enforcing Krone's commercial guarantee as to Krone. This is not speculation; it is admitted fact. Plaintiff does not dispute that it purchased the debt, that its owner is the same Arif who acted as the proxy and attorney for Krone's co-managers and co-guarantors, or that Plaintiff is selectively enforcing the entirety of the $6 million Bradley debt against only Krone. Nor does Plaintiff even attempt to argue that it has a legitimate business purpose in trying to collect such a massive debt against only Krone, when other avenues, such as foreclosure or the other co-guarantors are clearly available.

Instead, Plaintiff brazenly argues it has every right to selectively enforce the debt only as

to Krone, regardless of its motive, because that is what the commercial guarantee allows it to do. But this argument ignores that Plaintiff also has an implied duty of good faith and fair dealing, especially where the commercial guarantee gives Plaintiff wide discretion in how it chooses to enforce the guarantees and against whom. *Wilson v. Career Educ. Corp*., 729 F.3d 665, 673-74 (7th Cir. 2013) (per curiam). Pursuant to such a duty, when a party to a contract is provided with "contractual discretion, it must exercise that discretion reasonably and with proper motive, and may not do so arbitrarily, capriciously or in a manner inconsistent with the reasonable expectations of the parties." *Interim Health Care of N. Illinois, Inc. v. Interim Health Care, Inc., 225 F.3d 876, 884 (7th Cir. 2000).* Although the implied covenant of good faith cannot form the basis for an independent tort action, an alleged violation of the implied duty of good faith is used as a construction aid to assist the court in determining whether the manner in which one party exercised its discretion under the contract violated the reasonable expectations of the parties. *Wilson,* 729 F.3d at 675 (in other words, just because a contract gives discretion to do something does not mean the party is necessarily capable of abusing that discretion). The implied covenant of good faith can be breached even though a party is given discretion over an expressly conferred contract power. *Id*. at 674, *citing Tyshmare, Inc. v. Covell*, 727 F.2d 1145, 1154 (D.C.Cir. 1984).

Here, Plaintiff's lack of good faith is a core component in each of Krone's defenses and counterclaims in equity and tort. Krone had no expectation that Plaintiff would purchase the debt in the context of a dispute with co-managers, who were simultaneously represented by the same person who purportedly owns Plaintiff, or that Plaintiff would selectively enforce Krone's personal guarantee as a weapon. Plaintiff's breach of the implied covenant of good faith in this case illustrates its motive to assist Krone's co-managers and co-guarantors in forcing Krone out of the companies in violation of the co-managers' fiduciary duties.

3

Plaintiff also erroneously tries to capitalize on a apparent confusion at the last hearing as to whether the Court was empowered under Rule 276 to stay enforcement if Krone is able to establish a counterclaim. As Plaintiff should now be well aware, there is no confusion. The last sentence of Rule 276 provides: "If a defendant files a motion supported by affidavit which does not disclose a defense to the merits but discloses a counterclaim against the plaintiff, and defendant has been diligent in presenting his motion, the trial court may permit the filing of the counterclaim and to the extent justice requires may stay proceedings on the judgment by confession until the counterclaim is disposed of." Thus, even if the Court believes Krone has not established a defense, enforcement of the judgment can still be stayed so Krone can pursue his counterclaims.

## II. Krone Established A *Prima Facie* On The Merits Which Warrants Opening The Confessed Judgment And/Or Allowing The Counterclaims.

### A. Krone did not waive his defenses or counterclaims.

Plaintiff's chief argument throughout its response is that Krone waived all of his defenses and counterclaims under the commercial guarantee. (*See e.g.*, Dkt. #30, p. 4, 6). The argument fails for two reasons. First, because Krone's defenses and counterclaims are all derivative of Plaintiff's breach of the implied duty of good faith, they cannot be waived absent an express disavowal of the implied covenant of good faith. *Chem. Bank v. Paul*, 244 Ill. App. 3d 772, 782, 614 N.E.2d 436, 442 (1993) ("It must be recognized that the implied covenant of good faith reflects a strong public policy judgment: Parties with unfettered contractual discretion cannot be allowed to exercise that discretion in bad faith. And the essence of a strong public policy is that it overrides contractual provisions, or more accurately, that the public policy will cause courts to deny enforcement of contractual terms to the opposite effect") *citing BA Mortgage & International Realty Corp. v. American National Bank & Trust*, 706 F.Supp. 1364, 1376 (N.D.Ill.1989).

4

Second, Plaintiff completely ignores the qualifying language in the commercial guarantee that narrows the focus of the waiver to "any and all defenses *based on suretyship or impairment of collateral*." (Dkt. 30-1) (emphasis added). Krone is not brining defenses, equity or otherwise, sounding in surety or impairment of collateral. *See JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.,* 238 Ill. 2d 455, 474 (2010) (listing surety defenses); *AAR Aircraft & Engine Grp., Inc. v. Edwards*, 272 F.3d 468, 472 (7th Cir. 2001) (also listing surety defenses). Rather, his defenses and counterclaims are all separate and apart from his role as a surety and instead are directed at Plaintiff's bad-faith, selective enforcement of the commercial guarantee as a sword against Krone. Plaintiff does not even bother to address this distinction.

**B.   Krone alleged sufficient facts to establish a defense to enforcement based on Plaintiff's participation in an unlawful scheme.**

Plaintiff next argues Krone's defenses and counterclaims "do not pass muster" but Plaintiff fails to substantively address them. Significantly, Plaintiff does not dispute that any of these events happened. Instead, it re-invokes the failed waiver argument, and points to irrelevant considerations. For example, Plaintiff argues Krone signed the guarantee before the events took place, but that argument misses the point because Krone is not raising a surety defense. His defenses and counterclaims are equitable defenses to the use of the commercial guarantee in the manner described. Tellingly, Plaintiff has not identified a single case for the proposition that Krone cannot raise a defense in equity to the unlawful manner in which Plaintiff is attempting to selectively enforce the commercial guarantee.

Plaintiff also argues Krone executed the guarantee before IAM even existed, but that argument is irrelevant to whether IAM obtained the Bradley Note and commercial guarantee as part of a scheme to selectively use it against Krone and force him out of the companies. Plaintiff

cites no authority for the proposition that the scheme must be devised at the same time the guarantee was signed, nor would such an argument make sense.

Plaintiff again conflates Krone's allegations to suggest Krone believes Plaintiff owed a fiduciary duty (Dkt. #30, p. 9), but as set forth above, Krone never made that claim. Plaintiff's reference to a sentence in Krone's motion pointing out that Plaintiff, among others, was aware of the fiduciary duties owed to Krone by his co-managers, misses the point. This has nothing to do with whether Plaintiff or Arif are members or managers of Platform Bradley, and everything to do with whether they aided and abetted Krone's co-managers in breaching their fiduciary duties. *See Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 27–28, 799 N.E.2d 756, 767 (2003), as modified on denial of reh'g (Nov. 10, 2003) (the defendant must be aware of its role as part of the overall or tortious activity). Plaintiff also makes the preposterous argument that Krone has not alleged facts to show Plaintiff and Arif were aware of their tortious acts. To reach this conclusion, Plaintiff must ignore almost the entirety of Krone's motion and its exhibits, including the email from Kumar to the Bradley investors, in which Kumar defamed Krone and demanded a "loan" from the investors or risk losing their interests. Notably, that email fails to mention Kumar's own commercial guarantee, but does reinforce for the investors that Arif's patience is limited and foreclosure may be next. Setting aside the attempt to defame Krone and generate ill will toward him, the demand for a "loan" combined with a failure to disclose material facts about the other commercial guarantees or the attorney-client relationship with Arif amounts to fraud, and certainly is indicative of bad faith.

### C.     Krone's contribution defense.

Because Plaintiff now takes the position that it is not releasing Krone's co-guarantors, Kumar and Subhash, from their commercial guarantees, it would appear Krone cannot maintain a claim against Plaintiff. *See FDIC v. O'Mally*, 249 Ill.App.3d 340, 358 (1st Dist. 1994). However,

6

because Plaintiff has taken this position, Krone is now entitled to equitable contribution from his co-guarantors. *See QST Industries, Inc. v. Feinberg,* 2003 WL 260674, *X (N.D.Ill. Feb 6, 2003) *citing Harris v. Handmacher,* 185 Ill.App.3d 1023, 1026–27, 542 N.E.2d 77, 80 (1ˢᵗ Dist.1989). Of course, Plaintiff should likewise be bound by the position it has taken in the state court case. *See Seymour v. Collins*, 2015 IL 118432, ¶ 37, 39 N.E.3d 961, 973 (discussing judicial estoppel) and *N. Shore Cmty. Bank & Tr. Co. v. Sheffield Wellington LLC*, 2014 IL App (1st) 123784, ¶ 101, 20 N.E.3d 104, 123 (discussing judicial admissions).

      **D.**    **Krone established a *prima facie* defense on the merits on the grounds that the extent of liability is not ascertainable from the guaranty or promissory note**

Plaintiff next argues that the interest calculation should not factor into whether the sum owed is definite, and therefore, liability can be ascertainable. (Dkt. 30, p. 14). But Krone did not argue that interest should be considered. He referred to failure to identify amounts paid to date, setoffs and attorneys' fees. Plaintiff ignores these considerations and focuses only on interest, and therefore the Court should reject its argument.

## CONCLUSION

For the reasons set forth above and in its motion, Defendant SCOTT J. KRONE respectfully requests that this Honorable Court enter an order opening the judgment pursuant to Fed. R. Civ. P. 59(e) and Ill. S. Ct. R. 276, staying any enforcement of the judgment or attempt to collect on it and allowing Krone to pursue his counterclaims against Plaintiff, and for such further and additional relief the Court deems just and appropriate.

                                            Respectfully submitted,
                                            SCOTT J. KRONE

                                            */s/ Patrick R. Moran*
                                            One of his attorneys

John J. Rock, ARDC #6237980
Patrick R. Moran, ARDC #6272747
Rock Fusco & Connelly, LLC
321 N. Clark Street, Suite 2200
Chicago, IL 60654
(312) 494-1000 (p)
(312) 494-1001 (f)
jrock@rfclaw.com
pmoran@rfclaw.com
*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that a copy of the foregoing document was served on all counsel of record via the Court's ECF/CM system on the date of filing.

*/s/ Patrick R. Moran*